WHITE RIVER SAND AND GRAVEL
REMOVAL COMMISSION and Richard R.
HEATH, Director of Arkansas Dept.
of Finance and Administration *v.*
HAYES BROTHERS LAND AND
TIMBER COMPANY, Inc.

75-239                                                532 S.W. 2d 191

Opinion delivered February 9, 1976

284

*Jim Guy Tucker*, Atty. Gen., by: *Michael G. Epley*, Asst. Atty. Gen., for appellants.

*Murphy & Blair*, by: *H. David Blair*, for appellee.

FRANK HOLT, Justice. Act 232 of 1971 (Ark. Stat. Ann. § 41-4422 [Supp. 1975]) applies only to the removal of sand and gravel from a limited portion of the White River. Appellee, a riparian landowner, filed an application for a permit to remove sand and gravel from that part of the river. The commission, created by this act, denied the application. The trial court found on appeal that Act 232 is local legislation and, therefore, unconstitutional by virtue of Amendment 14, Arkansas Constitution (1874). Appellants assert the act is valid and, therefore, the trial court erred. We hold the issue is moot because Act 524 of 1975 repeals by implication Act 232 of 1971.

We have consistently held that when the legislature, by a later act, covers anew the whole subject matter embraced in any former act, then the later act repeals by implication any previous act on that subject. *King* v. *McDowel*, 107 Ark. 381, 155 S.W. 501 (1913); *Western Union Telegraph Company* v. *State*, 82 Ark. 302, 101 S.W. 745 (1907); and *Pulaski County* v. *Downer*, 10 Ark. 588 (1850). In the case at bar it is apparent from reading the two acts that the legislature intended for Act 524 of 1975 to cover the entire subject anew and be a substitute for Act 232 of 1971.

The purpose of the 1971 act is to control the removal of

sand and gravel from the bed of a described part of the White River, a navigable stream, to create a commission to promulgate regulations and designate those areas from which the sand and gravel may be removed. The commission was directed to give consideration to local needs for building and construction, the effect of the removal of sand and gravel upon fish and the preservation of the river as a tourist attraction. The commission consists of the Director of what is now the Department of Parks and Tourism, the Director of the Game and Fish Commission and the State Revenue Commissioner. The act vests in the Commissioner of Revenues the power to issue franchises for the removal of sand and gravel from the limited area of the river in accordance with rules promulgated by that commission.

The 1975 act is entitled:

An act to vest in the Department of Commerce the authority and responsibility for granting leases and permits for taking sand and gravel, minerals, and timber from state-owned lands; to establish the Natural Resources Committee and to prescribe its functions and duties; to provide for appropriate investigation and supervision of the activities of such leaseholders and permittees on state-owned lands; and for other purposes.

Section 1 prohibits the removal of "any sand and gravel **** from the beds or bars of navigable rivers and lakes in this State. . . . " without a lease or permit issued by the Department of Commerce after application to that agency. Section 2 creates "The Natural Resources Committee" which is composed of the "Director of the Department of Commerce, the Director of the Oil and Gas Commission, the State Geologist, the Director of the Forestry Commission, and the Director of the Soil and Water Conservation Commission, with the Director of the Department of Commerce as Chairman." Section 3 provides that upon application for a lease or permit with the Director of the Department of Commerce for the removal of sand and gravel, he must notify, in addition to members of the Resources Committee, other state agencies; namely, the Game and Fish Commission, the Department of Parks and Tourism, the Department of Pollution Control and

Ecology, "or any other appropriate State agency which has or may have a particular interest in the area proposed to be covered by the lease or permit, and any such interested agency shall have an opportunity to investigate the proposed production or taking of sand, gravel" and then to "report its findings and recommendations to the Department of Commerce regarding the same, including any recommendations for conditions or limitations to be imposed on the lessee with respect to the production of sand, gravel, **** under such lease or permit." This section further authorizes the Department of Commerce to deny or grant a permit or lease for the removal of sand and gravel under such conditions and requirements as it deems appropriate for the best interests of the state. However, the written consent of a state agency must be secured where it owns or has an interest in any property. Section 13 provides:

> *It is the purpose and intent* of this Act to charge the Department of Commerce with the authority and responsibility for considering applications for and granting leases and permits for the taking of sand, gravel **** from the beds and bars of navigable rivers and lakes in this State **** and to supervise activities on state-owned lands by lease-holders and permittees. (Emphasis added.)

The language of Act 524 of 1975 is unmistakably clear that the legislature intended to cover anew and exclusively the subject of the removal of sand and gravel from our navigable streams and substitute the 1975 act (consisting of fifteen sections) for the 1971 act (consisting of six sections). by doing so, it appears the intention of the legislature was to create a uniform system for the removal of sand and gravel from the beds of *all* the navigable streams instead of a limited portion of *one* (the 1971 act) in our state.

Appeal moot.