The Honorable H. Lacy Landers State Representative 524 River Street Benton, AR 72015
Dear Representative Landers:
This is in response to your request for an opinion on several questions concerning Act 903 of 1989, which is entitled "An act to provide that library records containing names or other personally identifying details regarding the patrons of the library shall be confidential. . . ." Your questions will be restated and answered in the order presented.
 1. Does Section 2(d) allow a library to post or circulate an overdue book list containing the names of persons with overdue books and listing the books each person has overdue?
If it can be demonstrated that the posting or circulation is done "for the purpose of collecting overdue books . . .", it may reasonably be concluded that the answer to your first question is "yes." This conclusion is based upon the language of Section 2(d) of Act 903, which states in pertinent part:
 (d) No provision of this act shall be construed to prohibit any library or any business operating jointly with a library from disclosing information for the purpose of collecting overdue books, documents, films or other items and/or materials owned or otherwise belonging to such library.
This determination will involve a factual question in each instance.
 2. Does Act 903 prohibit a library from notifying the parents of a minor that the minor has an overdue book and listing the name of the book?
The answer to your second question is, generally, "yes," so long as the minor is a "patron" for purposes of the act.* This conclusion is indicated by the definition of "confidential library records" under Section 1(b) of the act, which includes "documents or information in any format retained in a library THAT IDENTIFY A PATRON AS HAVING REQUESTED, USED OR OBTAINED SPECIFIC MATERIALS. . . ." (Emphasis added.) Section 2(a) states that "library records" containing names or other personally identifying details regarding patrons "shall be confidential and shall not be disclosed except as permitted by this act." With regard to your specific question, listing the name of the book would, it seems, violate the requirement of confidentiality, unless an exception applied. ___________. * Section 1(a) defines "patron" as "any individual who requests, uses or receives services, books or other materials from a library." ___________.
One exception, depending upon the facts, might be premised upon Section 2(d), noted above, involving disclosure of information "for the purpose of collecting overdue books." It should also be noted that personally identifiable information may be disclosed to the patron or "to any person with the informed, written consent of the patron given at the time the disclosure is sought," in accordance with Section 2(b)(1) and (2) of Act 903.
 3. Does Act (sic) restrict public school libraries from using students as extra help?
Act 903 of 1989 does not appear to contain any restrictions in this regard.
 4. Subsection (i) of Section 2 says: `Public libraries shall use an automated or Gaylord-type circulated system that does not identify a patron with circulated materials after materials are returned.' Does the term `public libraries' include libraries of schools?
It seems clear, from the language of Act 903, that the answer to this question is "no," with respect to libraries of PRIVATE schools. Such libraries would appear to be excepted from this requirement, which applies to "public libraries."
The answer is less clear, however, with regard to PUBLIC school libraries. Although the term "public library" would, viewed separately, reasonably include such libraries, it must be recognized that in determining legislative intent, each section is read in light of every other section. Chism v. Phelps, 228 Ark. 936,311 S.W.2d 297 (1958). It is thus significant to note that "public" and "school" libraries are separately identified under Section 2(a) of Act 903, which states:
 Library records which contain names or other personally identifying details regarding the patrons of PUBLIC, SCHOOL, academic and special libraries and library systems supported in whole or in part by public funds shall be confidential and shall not be disclosed except as permitted by this act. (Emphasis added.)
It may be successfully contended, based upon this distinction, that the term "public libraries," under Section 2(i), does not encompass school libraries. While it is true that legislative terms and phrases must be liberally construed in order that the true intent of the General Assembly may be fully carried out (A.C.A. 1-2-202), it must also be recognized in this instance that a knowing violation of Act 903 constitutes a misdemeanor. This fact dictates strict construction of the act. As expressed by the Arkansas Supreme Court with regard to penal provisions: "Nothing will be taken as intended which is not clearly expressed and all doubts must be resolved in favor of the defendant." Bennett v. State, 252 Ark. 128, 139, 477 S.W.2d 497 (1972), (citations omitted). An attempt to enforce Section 2(8) against persons associated with "school libraries" may be successfully challenged on this basis.
 5. Section 2(a) applies to the confidentiality standards to "public, school, academic and special libraries and library systems supported in whole or part by public funds." Does this provision include libraries of private schools?
It is my opinion that the answer to this question is "yes" with regard to private school libraries supported in whole or in part by public funds. Had the legislature intended to limit the act's applicability to PUBLIC school libraries, it could easily have so stated. Instead, the term "school", as it appears in Section 2(a), is not so qualified.
 6. Does the Act allow a grace period for libraries to comply with the law?
The answer to this question appears to be "no." The act does not contain language suggesting that a "grace period" has been allowed.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.